**CV12-0038**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DELIA LOZADA AND STEVEN STEWART,            Index No.
a/k/a STEVEN McINTOSH,
                            Plaintiffs,

    -against-                                           **COMPLAINT**

THE CITY OF NEW YORK, and POLICE OFFICER
"JOHN DOES", #S 1, 2, 3, 4, and 5,                **SUMMONS ISSUED**

                            Defendants.              <u>JURY TRIAL DEMANDED</u>
-----------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 04 2012 ★
BROOKLYN OFFICE

AZRACK, M.J.
GLASSER, J.

   Plaintiffs, Delia Lozada and Steven Stewart, also known as Steven McKintosh, by

their Attorneys, Ofodile & Associates, P.C., complaining of the Defendants, The City of New

York, "John Does #s 1, 2, 3, 4 and 5, allege as follows:


**PARTIES**

1.   At all times relevant and material to this case, Plaintiffs Delia Lozada and Steven

Stewart also known as Steven McIntosh (hereinafter Steven Stewart) were at all relevant times

residents of Kings County, Brooklyn, within the jurisdiction of this Court.


2.   At all times relevant and material to this case, Defendant City of New York was

and upon information and belief, still is a municipal corporation incorporated under the laws of

the State of New York and is the employer of Defendant "Officer John Doe"

1

3. Police Officers John Does 1, 2, 3, 4 and 5 were at all times relevant and material to this case employed by the City of New York through its Police Department and their actions complained of herein were done as agents of the City of New York under the common law.

## JURISDICTION AND VENUE

4. Jurisdiction is specifically conferred on the United States District Court by 28 U.S.C. § 1331, this being an action arising under the Constitution and Federal Law, and by 28 U.S.C. § 1343(a)(3), this being an action authorized by law to redress the deprivation, under color of statute, ordinance, regulation, custom or usage, of rights, privileges, and immunities secured to Plaintiff by the Constitution, and by 42 U.S.C. 1983 and under the Fourth and Fourteenth Amendments to the United States Constitution. This Court also has pendent jurisdiction over Plaintiffs claim brought under state laws, including claims brought under Article 1, section 12 of the New York State Constitution for violation of their State constitutional rights against unreasonable searches and seizures.

5. Venue is proper in the Eastern District of New York because the events complained of occurred Brooklyn, New York, in the County of Kings, which is within the Eastern District of New York.

## NATURE OF CLAIM

6. This is a claim for false arrest, false imprisonment, use of excessive force and illegal search and seizure against the City of New York through its agents at New York City

2

Police Department that caused Claimants injuries, as well as emotional and mental distress.

## FULFILMENT OF ADMINISTRATIVE PREREQUISITES TO ACTION

7. Plaintiffs Delia Lozada and Steven Stewart timely filed a Notice of Claim within 90 days of the incidents described herein and also appeared and testified at their scheduled 50-H Hearings and have therefore fulfilled all conditions precedent to institute their common law claims against the City of New York under the respondent superior/principal agent relationship.

## FACTUAL ALLEGATIONS

8. On February 9, 2011, at approximately 2:00 p.m., at Cleveland and Ridgewood Avenues in Brooklyn, New York, Plaintiff, Steven Stewart pulled his car over to make a phone call.

9. After pulling his car over and when he was about to make the call, he noticed that there was a bamboo roach in his car. The roach was totally empty and he threw it out of the car.

10. Mr Stewart then got on his phone and was talking on the phone for a few minutes when he noticed someone standing by the driver's side window.

11. That someone was Officer John Doe # 1 who had picked up the empty piece of paper and asked Mr. Stewart if it belonged to him. Mr. Stewart told Joh Doe #1 that he threw it out of the car and that it was empty.

3

12. Officer John Doe # 1 asked Mr Stewart to step out of the car and placed Plaintiff Stewart under arrest.

13. Although Plaintiff Lozada did not do anything and was just sitting in the passenger seat of the car and was not seen throwing anything and Mr Stewart admitted to throwing the bamboo roach, Officers John Doe # 1 at the scene personally went through her pocket book, spreading everything on the car searched through it and was rude and abusive to her.

14. Officer John Doe # 1 who arrested Mr Stewart went to Plaintiff Lozada, searched her person, putting his hands on her instead of having a female officer do so, and also arrested her.

15. Plaintiff Lozada was sitting in the passenger seat of the car that Plaintiff Stewart was driving when she was asked to step out. The Officer John Doe # 1 told the other John Doe 2 in Spanish to get Plaintiff Lozada out of the car and watch her.

16. When John Doe #1 finished handcuffing Mr. Stewart, he came to Plaintiff Lozada, deliberately bumped her in her chest and snatched her bag to search it without her consent. Because Ms Lozada was standing on a little hill, she almost fell.

4

<mark>Case 1:12-cv-00038-ILG-JMA   Document 1   Filed 01/04/12   Page 5 of 19 PageID #: 5</mark>

17. Defendant John Doe # 1 then dumped everything in her bag on top of the car. The wind was blowing and Ms. Lozada told John Doe # 1 to be careful because she had important papers in there. The Officer ignored her. He searched her, touched her body, and went inside her pockets. He also twisted Ms Lozada's thumb hard which hurt a lot. He asked her whether she was doing anything. She told him no. He then asked her what was her relationship with Mr. Stewart. John Doe # 1 then searched the car and arrested Claimant Lozada without telling her why she was being arrested.

18. Officer John Doe # 1 then said to Ms Lozada: "You seem upset" and when she replied "Yes, I did nothing wrong and I am in my 50's and I have to go home to my children", Officer John Doe # 1 said: "That's too bad, you should have thought about that before coming out this morning".

19. The handcuffs were applied too tightly on Mrs. Lozada's wrists Her wrist swelled underneath them, and the Officers refused repeated requests to loosen the handcuffs.

20. Both Officers held both Plaintiffs at the scene until a van with additional officers arrived.

21. Plaintiffs were driven around and about in the Van until they filled the Van at about 7:00 p.m.

<mark>5</mark>

22. Plaintiff Steven Stewart was not allowed to use the bathroom although he needed to despite the fact that the officers stopped at Dunkin Donuts to devour donuts and relieve themselves in the restrooms.

23. Plaintiffs remained at the 75th Precinct until 1:00 a.m. The Officers then took Mr. Stewart to Central Booking where he was until 8:00 p.m., Thursday.

24. Plaintiff Ms. Lozada spent the night at 75th Precinct. The next day around 8p.m. Ms Lozada saw a judge. She was told not to say anything and she said nothing in court. She was given a piece of paper to sign which she did and that was the end of the case.

25. At Central Booking, Mr. Stewart then met with a Legal Aid Attorney who told Mr. Stewart that he was going to get a $1.00 bail but a Supreme Court warrant came up for him in the name of Emilio Mendoza. The Legal Aid Attorney told Mr. Stewart that he would remain in custody and he would be remanded to Rikers Island until the following Monday.

26. Mr Stewart's Legal Aid Counsel also told Mr. Stewart that from the description of Emilio Mendoza, he knew that Mr. Stewart was not Emilio Mendoza who was described as a being 5"7" and 155 lbs Colombian national who did not speak English. Mr Stewart is 6'0" tall, weighed 210 lbs, is an African American male born and raised in the United States who did not even speak Spanish.

6

27. In 1993, Plaintiff Stewart was caught up in a drug bust. Upon information and belief, at the Precinct, Mr. Mendoza's and Mr Stewart's finger prints got mixed up by the police. The mixed up records resulted in Mr. Stewart's record showing that he was arrested for a felony.

28. When Mr Stewart was about to be fingerprinted at the Precinct as Emilio Mendoza, he told the police that he was not Emilio Mendoza. The Officers said they realized that they made a mistake, they acknowledged that he was not Emilio Mendoza and advised Mr Stewart that the error would be corrected then and there in 1993. Plaintiff was charged with disorderly conduct after the 1993 arrest and was given a $50.00 fine which he paid and that was the disposition of his 1993 arrest.

29. After this 2011 arrest, Plaintiff Stewart's blood pressure increased tremendously. Emergency medical units wanted to take Mr Stewart in an Ambulance to the hospital, but Officers insisted on taking him there. The Officer placed shackles around Mr. Stewart's ankles and handcuffed him behind his back. The officers put both the shackles and the handcuffs too tight and refused his pleas to loosen them.

30. Plaintiff Stewart was driven to Brookdale Emergency Room. At the hospital Plaintiff Stewart's blood pressure increased more, reaching 220/115.

31. The hospital wanted to admit Mr Stewart but the officers who took him to the hospital argued with the hospital staff to release him. Plaintiff Stewart spent five (5) hours in the

7

hospital and when he fell asleep his blood pressure dropped.

32. Because the officers insisted that the hospital release Mr Stewart, the hospital gave Plaintiff Stewart too much medication, and at Rikers Island, Mr Stewart was told by medical staff that he could have suffered a heart attack. It was due to the City's breach of its municipal duty that Plaintiff was placed in such predicament.

33. From the hospital, Mr Stewart was taken back to the 75th Precinct and he did not get to Rikers Island until the 12th of February. He remained in Rikers Island until the 18th of February when he was released.

34. Plaintiff Stewart went to the Supreme Court three (3) days in a row. On the 3rd day in Court the judge made it clear that Plaintiff Stewart was not Emilio Mendoza and still the City agents - prosecutors refused to agree to the release of Plaintiff Stewart pending the sorting out of the obvious error that led to a warrant appearing for his arrest as Emilio Mendoza.

35. Mr Stewart went back to court on March 9, 2011 when the Judge made sure that the papers were properly straightened out this time around so that he would not again be arrested based on the warrant for Emilio Mendoza. To ensure that Mr Stewart was not again arrested, he also vacated the warrant against Emilio Mendoza.

36. In 2001 Mr Stewart and his business partner applied for a home improvement license and the license was denied because Plaintiff Stewart allegedly had a felony drug arrest. Mr Stewart's partner advised him of the reason for the denial of the license.

37. Mr Stewart went to court to straighten it out. The Clerk checked and found that the disposition of Mr Stewart's 1993 arrest was a $50.00 fine for disorderly conduct and a warrant being out for his arrest for a felony drug offense was a mix up.

38. The Clerk told Mr Stewart that she would straighten out the mix up and provided Mr Stewart and his partner with papers indicating that Plaintiff Stewart had not been convicted of a drug offense with which the business license was issued. The Clerk told Mr Stewart that she straightened out the record and it would no longer show that he is wanted on a warrant or arrested for a felony.

39. The City through its police Department failed in its non-delegable ministerial duty to attach the fingerprints and photograph of Emilio Mendoza to his arrest sheet. Instead, both the photograph and fingerprints of Mendoza were removed and Plaintiff's switched to Mendoza's.

40. Plaintiff was also unduly detained because the Police Department had Mr Mendoza's picture and it took 8 days for the Police and the District Attorney to check the photograph although Plaintiff maintained his innocence, stated that it was a mix up that was supposed to have been corrected and had it not been for the insistence of a fair minded Judge,

Plaintiff would have been kept for a much longer period.

## AS FOR A FIRST CAUSE OF ACTION

41. Plaintiffs repeat and reallege paragraphs 1 through 40 as if each paragraph is repeated verbatim herein.

42. Defendants Police Officers John Does # 1 and 2 while acting under color of State Law, arrested and imprisoned Plaintiffs without probable cause to believe that they had committed any crimes. Therefore, John Does 1 and 2 violated Plaintiffs' rights to be free from unreasonable search and seizures, secured to then under the Fourth and Fourteenth Amendments to the Constitution. By violating Plaintiffs' constitutional rights under color of State Law, the individual Defendants violated 42 U.S.C. § 1983. The actions of John Does Nos. 1 & 2 also violated Art. 1 § 12 of New York State Constitution which guarantees Plaintiffs freedom from unreasonable searches and seizures.

43 As a result of the individual Defendants' unlawful seizure of Plaintiffs' persons, Plaintiffs were denied their freedom and liberty and suffered severe emotional, mental, and physical distress. Plaintiffs each claim general and compensatory damages in an amount that would adequately compensate each of them for the violation of their rights and for emotional, mental, and physical distress;

44. In addition, because the individual Defendants acted with malice and intentional disregard for Plaintiff Lozada's constitutional rights when they arrested her, taunted and harassed her without probable cause, Plaintiff Lozada seeks punitive damages in an amount sufficient to punish the individual Defendants and deter others like them from repeating such unlawful conduct.

45. Plaintiffs also seek attorneys' fees and the costs and disbursements of this action.

## AS FOR A SECOND CAUSE OF ACTION

46. Plaintiffs repeat and reallege paragraphs 1 through 45 as if each paragraph is repeated verbatim herein.

47. In violation of their common law rights not to be arrested without reasonable cause. Defendants arrested Plaintiffs without any reasonable cause to believe that either of them committed an offense or to believe that Steven Stewart committed an arrestable offense.

48. As a result of the individual Defendants' arresting and prosecution of Plaintiffs, Plaintiffs lost their freedom and liberty and suffered damages thereby and claims general and compensatory damages in an amount that would adequately compensate them for the violation of their rights and for his emotional, mental, and physical distress; and specific damages in the amount of income that each lost during his incarceration,

11

49. In addition, because the individual Defendants acted with malice and intentional disregard for Plaintiffs' common law rights, Plaintiffs seek punitive damages in an amount sufficient to punish the individual Defendants and deter others like them from repeating such unlawful conduct.

## AS FOR A THIRD CAUSE OF ACTION

50. Plaintiffs repeat and reallege paragraphs 49 as if each paragraph is repeated and re-alleged herein.

51. Plaintiff Steven Stewart was falsely imprisoned as a result of New York State Police's breach of their non-delegable and non-discretionary function to appropriately affix the fingerprints of Emelio Mendoza to the finger-print cards labeled Emilio Mendoza and to affix Mr. Stewart's finger prints to cards belonging to Mr Stewart during the 1993 arrest and Plaintiff Stewart therefore suffered damages as a result, sustaining serious physical and emotional injuries as a result.

## AS FOR A FOURTH COURSE OF ACTION

52. Plaintiffs repeat and reallege paragraphs 1 though 51 as if each paragraph is repeated and realleged verbatim herein.

12

53. Defendants and their agents created finger print cards, and upon information and belief labeled them Emilio Mendoza but instead of affixing Emilio Mendoza's prints to the said cards, affixed Plaintiff's prints to those cards, Plaintiff noticed the error as he was being finger printed and advised the Officers, they acknowledged their mistake and told Plaintiff Stewart that the error would be corrected but failed to correct it, Plaintiff was arrested and the arrest was as a direct result of the officers failing to perform or improperly performing their ministerial, non-discretionary and non-delegable duty to properly match the name of Emlio Mendoza to his finger prints and Plaintiff's finger prints to his name.

54. As a result of the breach the special duty aforesaid owed to Plaintiff, Plaintiff was Plaintiff Steven Stewart was arrested and imprisoned, and maliciously prosecuted from February 9, 2011 to February 19, 2011.

55. Plaintiff Steven Stewart, suffered physical and emotional injuries, was hospitalized and had to be medicated as a result of the Defendants breach of their non-delegable and non-discretionary function

## AS FOR THE FIFTH CAUSE OF ACTION

56. Plaintiffs repeat and reallege paragraphs 1 through 55 as if each paragraph is repeated and realleged verbatim herein.

57. Plaintiff Steven Stewart was subjected to unreasonable seizure in violation of the Fourth Amendment and to cruel and unusual punishment in violation of the Eight Amendment by "John Does" #s 3 and 4 when he was driven around in a van for more than four hours, repeatedly requested to be allowed to urinate/use the bathroom because he suffered from high blood pressure and urgently needed to use the bathroom, was not allowed to use the bathroom but was in fact cursed at and mocked although John Does #s 3 and 4 stopped many times during the period they were driving Plaintiffs around in the Van, including at a at Dunkin Donuts store where they got donuts and coffee and also used the bathroom themselves.

58. Partly as a result of the failing and /or refusing to allow Plaintiff Stewart to use the bathroom, Plaintiff's blood pressure rose to unmanageable levels that required him being transported to the hospital from the Police Precinct for treatment.

## AS FOR THE SIXTH CAUSE OF ACTION

59. Plaintiffs repeat and reallege paragraphs 1 through 58 as if each paragraph is repeated and realleged verbatim herein.

60. Defendants "John Does", #s 1, 2, and 5 subjected Plaintiffs to excessive force when they handcuffed plaintiffs too tightly and refused repeated demands to loosen the handcuffs, causing Plaintiffs injuries.

14

61. There were no legitimate law enforcement reasons for handcuffing Plaintiffs as tightly as they were handcuffed but only to punish them and there were no reasonable explanations offered to Plaintiffs for the failure to loosen the handcuffs.

## AS FOR THE SEVENTH CAUSE OF ACTION

62. Plaintiffs repeat and reallege paragraphs 1 through 64 as if each paragraph is repeated and realleged verbatim herein.

63. John Doe # 1 assaulted Lozada Plaintiff when he bumped into her chest against her will and for no legitimate law enforcement purposes and also when he went into inside her clothing pockets, touching her body in the process, to search her when patting her down revealed that there was no further need to go inside her pockets or touch her body and when by regulation John Doe # 1 should have called on a female officer to go inside Plaintiff's clothes if he deemed it necessary.

## AS FOR THE EIGHT CAUSE OF ACTION

64. Plaintiffs repeat and reallege paragraphs 1 through 63 as if each paragraph is repeated and realleged verbatim herein.

65. John Doe # 1 went inside Plaintiff Lozada's clothing pockets, touching her body in the process, to search her when patting her down revealed that there was no further need to go inside her pockets or touch her body and when by regulation John Doe # 1 should have called on

15

a female officer to go inside Plaintiff's clothes if he deemed it necessary. John Doe # 1 also emptied the contents of Plaintiff Lozada's pocket book on top of Mr Stewart's car in plain view and went through its contents in violation of Plaintiff Lozada's Fourth Amendment rights not to be subjected to unreasonable search and seizure as well as her constitutional right to privacy.

## AS FOR THE NINTH CAUSE OF ACTION

66. Plaintiffs repeat and re-allege paragraphs 1 through 65 as if each paragraph is repeated and re-alleged verbatim herein.

67. At all times relevant and material to this case, Police Officers John Does #1 through 5 were employed by the City of New York through its Police Department and their actions complained of herein were done during their employment and in the course of their employment and the City of New York is therefore jointly and severally liable to Plaintiffs for the injuries sustained herein as herein and alleged under the common law and under Article 1 § 12 of the New York State Constitution under the respondeat superior and/or principal/agent rule.

## AS FOR A TENTH CAUSE OF ACTION

68. Plaintiffs repeat and reallege paragraphs 1 through 67 as if each paragraph is repeated verbatim herein.

69. The violations of Plaintiff's constitutional rights by the individual Defendants and were carried out under the following policies, customs, and practices of Defendant City of

16

New York:

I. City to failed to properly train, supervise, discipline and hold accountable its police officers and its affirmative instruction to police officers to stop citizens when they have not committed any crimes which has encouraged and fostered unconstitutional behavior among New York City Police Officers and Plaintiff is therefore entitled to damages against the City for the violation of his constitutional rights.

II. Failure to establish, publish, and instill in New York City Police Officers and Detectives the practical meaning of probable cause or reasonable cause for arrests so that officers would not detain and/or arrest citizens based on their hunches, inklings, or mere suspicion and without reasonable or probable cause;

III. Failure to establish, publish, and instill in New York City Police Officers and Detectives the importance of conducting an investigation before arresting a member of the public;

IV. De-emphasizing the importance of an arrest warrant issued by a Judge or Magistrate, which would act as a buffer between the citizenry and the Police, and encouraging the Police under the aggressive policing policy of the Giuliani and Bloomberg administrations to arrest first and ask questions later; and

V. Failing to take proper corrective and punitive actions against overreaching police officers and creating the impression that crime reduction is paramount and triumphs over constitutional rights in all circumstances.

70. Under 42 U.S.C. § 1983, Defendant City is jointly and severally liable with

17

the individual Defendants under Monell, and under Article 1 § 12 of the New York State Constitution and under the common law, the City is jointly and severally liable to Plaintiffs under principal/agent and/or respondeat superior rule, for the general and specific damages Plaintiffs sustained in the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eight, Ninth and Tenth Causes of Action, as well as for the attorneys' fees and the costs and disbursements of the action, under 42 U.S.C. section 1983.

**WHEREFORE,** each Plaintiff prays the Court for judgment for each Cause of Action, as may be applicable to him or her, awarding:

i. general and compensatory damages in an amount that would adequately compensate each plaintiff for the violation of his/her rights and for the emotional, mental, and physical distress each sustained against Defendants, jointly and severally;

iii. punitive damages against John Does #s 1 and 2, in an amount sufficient to punish the individual Defendants John Does # 1 and 2 and deter others like them from repeating such unlawful conduct, jointly and severally;

iv. attorneys' fees (under 42 U.S.C. § 983), and the costs and disbursements of this action, in the amount to be proved at trial and in accordance with proof, against all Defendants, jointly and severally; and

v. such other relief as the court deems just and proper.

Dated: Brooklyn, New York
January 4, 2012

                                        OFODILE & ASSOCIATES, P.C.
                                        Attorneys for Plaintiffs

By: _____
                                        ANTHONY C. OFODILE, ESQ. (AO-8295)
                                        498 Atlantic Ave.
                                        Brooklyn, NY 11217
                                        Tel. No.: (718) 852-8300