UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DELIA LOZADA AND STEVEN STEWART
a/k/a STEVEN MCINTOSH,

       Plaintiffs,                              Memorandum and Order

                                                      12 Civ. 0038 (ILG) (JMA)

    - against -

CITY OF NEW YORK, et al.,

       Defendants.
-------------------------------------------------------x

GLASSER, United States District Judge:

      Delia Lozada and Steven Stewart (collectively, "plaintiffs") bring this action against the City of New York ("City") and Officers John Does #1-5 of the New York City Police Department ("NYPD") (collectively, "defendants"), alleging false arrest, false imprisonment, malicious prosecution, illegal search and seizure, deliberate indifference to medical needs, excessive force, and assault in violation of 42 U.S.C. § 1983; Article I, § 12 of the New York State Constitution ("NYSC"); and New York common law. Currently before the Court is the City's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1]  For the following reasons, the motion is GRANTED in part and DENIED in part.

---

[1] Although the Corporation Counsel purports to represent only the City and moves for judgment on the pleadings on behalf of only the City, by arguing for dismissal of the claims that are brought solely against the Doe defendants, he has effectively appeared for the Doe defendants as well.  The Court therefore treats the pending motion as having been brought by all defendants. See Soto v. City of New York, No. 04 Civ. 4559 DC, 2005 WL 66893, at *2 n.3 (S.D.N.Y. Jan. 11, 2005).

1

## BACKGROUND

The following facts are taken from plaintiffs' Complaint, which is presumed true for purposes of the pending motion, as well as from extrinsic documents that the Court may consider in ruling on this motion.[2] On the afternoon of Wednesday, February 9, 2011, Stewart stopped his car on a street in Brooklyn to make a phone call; Lozada was sitting in the passenger seat. Complaint dated January 4, 2012 ("Compl.") ¶¶ 8, 13 (Dkt. No. 1). Stewart noticed an empty "bamboo roach"[3] in the car and threw it out. Id. ¶ 9. Officer John Doe #1 then appeared at the window and asked him if the roach belonged to him. Stewart responded that he "threw it out of the car and that it was empty." Id. ¶¶ 10–11. Doe #1 asked Stewart to step out of the car and arrested him. Id. ¶ 12.

Lozada was then asked by Officer John Doe #2 to come out of the car. When she did, Doe #1 "deliberately bumped her in her chest," almost causing her to fall. He searched her person and her pockets, and dumped the contents of her pocketbook on top of the car. Doe #1 arrested and handcuffed Lozada. Her repeated requests to loosen the handcuffs which were causing her wrist to swell were denied. Id. ¶¶ 13–19. Plaintiffs were then put in a van and driven around by Officers John Does #3 and #4 for more than four hours until they arrived at the 75th precinct. Id. ¶¶ 20–23, 57. Although Stewart had a high blood pressure condition and "repeatedly requested" to use the

---

[2] Defendants submit plaintiffs' arrest reports, certificates of disposition regarding those arrests, and transcripts from the examinations that were held pursuant to New York General Municipal Law § 50-h, which permits examination of those who file a notice of claim against the City. The Court takes judicial notice of the arrest reports and certificates of disposition. See Awelewa v. New York City, No. 11 Civ. 778 (NRB), 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012). The 50-h transcripts, however, are extrinsic documents that may not be considered in determining this motion. Aguilera v. Cnty. of Nassau, 425 F. Supp. 2d 320, 322–23 (E.D.N.Y. 2006).

[3] The Complaint does not explain this phrase but the parties' briefs characterize the item as a "marijuana roach," Dkt. No. 11 at 3; Dkt. No. 16 at 5, which is "the remains of a smoked marijuana cigarette." United States v. Grotke, 702 F.2d 49, 51 (2d Cir. 1983); see Webster's Third New International Dictionary 1963 (1993).

bathroom because he "urgently needed" to do so while in the van, his requests were ignored.4 Id. ¶¶ 22, 57.

Both plaintiffs were charged with possession of marijuana. Declaration of Sumit Sud ("Sud Decl."), Exs. E & F (Dkt. No. 12). Lozada was kept at the precinct overnight and brought before a judge the following evening, February 10, 2011, who adjourned her case in contemplation of dismissal. Compl. ¶ 24; Sud Decl., Ex. E. Stewart was brought from the precinct to Central Booking. When he was fingerprinted there, his fingerprints were found to be associated with one Emilio Mendoza. Stewart believes that in 1993, he and Mendoza were arrested in the same drug bust and their fingerprints were mixed up during the arrest. Thus, when Stewart was processed at Central Booking he was mistakenly believed to be Mendoza and an outstanding arrest warrant for Mendoza was attributed to Stewart, even though the description of Mendoza in the warrant did not correspond to Stewart's appearance. Compl. ¶ 23–28.

In the interim, Stewart's blood pressure "increased tremendously." To transport him to Brookdale Emergency Room, Officer John Doe #5 handcuffed and shackled him and refused his requests to loosen them. Id. ¶¶ 29, 60. After spending five hours at the ER, where he was given medication and fell asleep, his blood pressure dropped. Id. ¶ 30–32. Upon his release from the hospital he was transferred to Rikers Island on the assumption that he was Mendoza, where he remained until his release on February 18, 2011. Id. ¶ 33. The charge of marijuana possession was adjourned in contemplation of dismissal. Sud Decl., Ex. F.

---

4 Stewart does not explain the connection but the Court notes that hypertension can be treated with diuretics, which are agents that "stimulate[] the kidneys to produce more urine." 2 J.E. Schmidt, M.D., Attorneys' Dictionary of Medicine, D-177–178 (2011).

Plaintiffs filed this action on January 4, 2012, seeking damages and attorneys' fees. Complaint at 18. Defendants submitted their Answer on March 22, 2012, and moved for judgment on the pleadings on January 25, 2013. Dkt. Nos. 3 & 10.

## LEGAL STANDARDS

### I. Motions for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." In deciding a Rule 12(c) motion, a court applies the same standard applicable to a Rule 12(b)(6) motion for failure to state a claim. Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009). To survive a motion to dismiss, a complaint not only must include a short, plain statement of the claim showing the pleader is entitled to relief, Fed. R. Civ. P. 8(a), but also "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level. . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). The court may look outside the complaint to consider documents that are incorporated in the complaint by reference and matters of which judicial notice may be taken. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

### II. Section 1983 Claims

"Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). The statute itself "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Id. (citations

4

omitted).  Thus, the "first step" in analyzing such a claim "is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 270 (1994) (citations omitted).  A plaintiff also must plead the personal involvement of defendants in the alleged constitutional violation.  Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010).

## DISCUSSION

### I. False Arrest Claims[5]

In their first and second causes of action, Stewart and Lozada bring false arrest claims against Officers John Does #1 and #2 under § 1983, New York common law, and the NYSC for arresting and imprisoning them without probable cause.  Compl. ¶¶ 41–49.  A § 1983 claim for false arrest, which derives from the Fourth Amendment guarantee against unreasonable seizure, "is substantially the same as a claim for false arrest under New York law."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).

The elements of a false arrest claim are "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (quotation omitted).  "The existence of probable cause to arrest . . . is a complete defense to an action for false arrest" under both § 1983 and New York law.  Weyant, 101 F.3d at 852 (quotation omitted).  Probable cause exists when the arresting officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to

---

[5] Plaintiffs assert ten "causes of action," some of which do not identify the law or statute allegedly violated and some of which overlap with others.  The Court has attempted to determine the legal basis for each cause of action and to consider duplicative claims together.

5

warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id. (citations omitted).

### A. Probable Cause

Defendants argue that probable cause existed to arrest plaintiffs for possession of marijuana. Memorandum of Law in Support of Defendant's Motion to Dismiss ("Defs.' Mem.") at 6–8 (Dkt. No. 11). Plaintiffs do not appear to oppose this argument with respect to Stewart, but argue that there was no probable cause to arrest Lozada. Plaintiff's [sic] Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pls.' Opp'n") at 7 (Dkt. No. 16).

Does #1 and #2 had probable cause to arrest Stewart. When Stewart acknowledged that he had thrown the roach, there was reason to believe that he had possessed marijuana in violation of New York Penal Law § 221.05. See People v. Sauger, 396 N.Y.S.2d 910, 911–12 (App. Div. 3d Dep't 1977) (finding probable cause to arrest where police officer observed roach in car). Therefore, the motion to dismiss Stewart's false arrest claims is granted.

However, defendants fail to establish that there was probable cause to arrest Lozada. Defendants first argue that Lozada constructively possessed the roach because it was discarded from a car in which she was a passenger. Defs.' Mem. at 6–7. A defendant constructively possesses tangible property when he "exercise[s] 'dominion or control' over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized." People v. Manini, 594 N.E.2d 563, 569 (N.Y. 1992) (quoting N.Y. Penal Law § 10.00[8]). In the specific context of a car, "the location of the contraband within the car in relation to the defendant" is relevant to determining control. People v. Ballard, 507 N.Y.S.2d 572,

6

588–89 (N.Y. Sup. Ct. 1986); see People v. Carter, 875 N.Y.S.2d 303, 306 (App. Div. 3d Dep't 2009) (considering "the location and position of the handgun relative to where defendant was seated"). "Mere presence at the location of contraband does not establish possession." United States v. Rodriguez, 392 F.3d 539, 548 (2d Cir. 2004) (finding that defendant's presence in car "only would establish his proximity" to contraband but not control over it). In this case, defendants' theory of constructive possession rests on Lozada's mere presence in the car from which Stewart had thrown a roach and thus does not establish that she exercised control over it, particularly because its location in the car is unidentified and the quantity of contraband was so small. This theory does not support probable cause to arrest.

Defendants also rely on the automobile presumption, New York Penal Law § 220.25(1), which states that "[t]he presence of a controlled substance in an automobile . . . is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found." See Defs.' Mem. at 7. However, because New York Penal Law § 220.00(5) excludes marijuana from the definition of controlled substance, the automobile presumption does not apply to marijuana. People v. Dan, 866 N.Y.S.2d 382, 383–84 (App. Div. 3d Dep't 2008) (finding that "a plain reading" of the two statutes "reveals that the language is clear and free from any ambiguity regarding the exclusion of marihuana possession from the application of the automobile presumption"); People v. Gabbidon, 836 N.Y.S.2d 221, 221–22 (App. Div. 2d Dep't 2007). Therefore, Does #1 and #2 did not have probable cause to arrest Lozada for possession of marijuana.[6]

---

[6] Defendants' argument that Townes v. City of New York, 176 F.3d 138 (2d Cir. 1999), precludes Lozada's claim for false arrest fails as well. Defs.' Mem. at 8–9. In Townes, the Second Circuit

7

**B. Qualified Immunity**

Defendants further argue that Does #1 and #2 are entitled to qualified immunity for the false arrest claims. Defs.' Mem. at 9–10. Qualified immunity protects a police officer from liability for civil damages where "(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007) (quotation omitted).

"There is no doubt that the right to be free from arrest without probable cause was clearly established" at the time of Lozada's arrest. Id. (citation omitted). Additionally, it was not objectively reasonable to believe that there was probable cause to arrest Lozada based on her mere presence in the car from which a single roach was thrown. Therefore, the motion to dismiss Lozada's § 1983 and common law false arrest claims is denied.[7]

## II. False Imprisonment Claim

The third cause of action alleges a false imprisonment claim for Stewart's prolonged detention at Rikers Island due to the fingerprinting error made in 1993.

---

held that although the police's initial, suspicionless stop of a taxi was illegal, the incriminating evidence they subsequently discovered provided probable cause to arrest the taxi's occupants and thus precluded a § 1983 claim for the arrest. Id. at 145–46. In this case, however, no incriminating evidence provided probable cause to arrest Lozada.

[7] Plaintiffs also bring claims for false arrest under Article I, § 12 of the NYSC, which essentially tracks the Fourth Amendment of the federal Constitution. A damages cause of action is available directly under § 12, Brown v. State, 674 N.E.2d 1129 (N.Y. 1996), except where the plaintiff has brought or could have brought § 1983 or common law causes of action for the same claim. See Vilkhu v. City of New York, No. 06-CV-2095 (CPS)(JO), 2008 WL 1991099, at *8–9 (E.D.N.Y. May 5, 2008); Lyles v. State, 770 N.Y.S.2d 81, 82 (App. Div. 2d Dep't 2003), aff'd on other grounds, 820 N.E.2d 860 (N.Y. 2004). Because plaintiffs have brought § 1983 and common law claims for false arrest, their § 12 claims are dismissed.

Compl. ¶ 51. Stewart does not allege personal involvement by any of the Officers John Does #1-5 in the 1993 arrest and fingerprinting error, nor is it plausible that any of them were involved. Therefore, the motion to dismiss this claim is granted.

### III. Illegal Search Claim

Lozada brings a § 1983 claim against Officer John Doe #1 for illegal search in violation of the Fourth Amendment as the eighth cause of action, asserting that he illegally searched (1) inside her clothing pocket when a patdown of her outer clothing sufficed, (2) her pocketbook, and (3) her person because a female police officer should have conducted the search. Compl. ¶¶ 64–65. Defendants appear to justify the searches as (1) incident to a lawful arrest and (2) incident to an investigatory stop. Defs.' Mem. at 13–14.

Lozada's arrest was unlawful and therefore the search incident to her arrest was unlawful. Moreover, the search cannot be construed as one incident to an investigatory stop because there was no such stop: Defendants arrested Lozada rather than stopped her on suspicion of criminal activity. Accordingly, the motion to dismiss Lozada's illegal search claim is denied. However, her contention that Doe #1 should have called a female officer to conduct the search of her person is meritless. Courts have consistently found that "there is no constitutional right to be patted down by a person of the same sex." Golden v. Cnty. of Westchester, No. 10-CV-8933 (ER), 2012 WL 4327652, at *6 (S.D.N.Y. Sept. 18, 2012); see also Stokes v. City of New York, No. 05-CV-0007 (JFB)(MDG), 2007 WL 1300983, at *12 n.9 (E.D.N.Y. May 3, 2007) (collecting cases).

### IV. Excessive Force Claims

The sixth cause of action against Officers John Does #1, 2, and 5 for excessive force alleges that plaintiffs were handcuffed "too tightly" during their arrest and Stewart

9

was shackled and handcuffed "too tight[ly]" for his trip to the emergency room. The Complaint further alleges that Lozada's wrist swelled from the handcuffing, that the handcuffs "caus[ed] plaintiffs injuries," and that their requests to have the handcuffs loosened were refused. Compl. ¶¶ 16, 19, 29, 60.

"There is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." Lynch ex rel. Lynch v. City of Mount Vernon, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (collecting cases). Plaintiffs fail to state a claim because their vague reference to "injuries" and Lozada's complaint of a swelled wrist are insufficient to allege a continuing or long-lasting injury. See Abdul-Rahman v. City of New York, No. 10 Civ. 2778 (ILG), 2012 WL 1077762, at *7–8 (E.D.N.Y. Mar. 30, 2012) (granting judgment on the pleadings where plaintiff alleged "numbness and marks to his wrists" from excessively tight handcuffs because "alleged injuries are de minimis") (collecting cases). Accordingly, the motion to dismiss plaintiffs' excessive force claims is granted.

**V. Deliberate Indifference Claim**

The fifth cause of action is a § 1983 claim for "cruel and unusual punishment in violation of the Eight[h] Amendment" against Officers John Does #3 and #4 for preventing Stewart from using a bathroom for more than four hours despite his high blood pressure condition. Compl. ¶¶ 57–58. While a convicted prisoner may bring a § 1983 claim for deliberate indifference to his medical needs under the Eighth Amendment, a pretrial detainee's claim is governed by the Due Process Clause of the Fourteenth Amendment. Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). A plaintiff must allege (1) the existence of a serious medical condition and (2) defendants' deliberate indifference to that condition. Id. at 72.

Courts have differed as to whether high blood pressure, or hypertension, is a serious medical condition. Compare Hamilton v. Smith, No. 06-CV-805 (GTS/DRH), 2009 WL 3199531, at *15 (N.D.N.Y. Jan. 13, 2009) ("[W]hile high blood pressure and cholesterol may require medical treatment, they do not substantially affect an individual's quality of life or leave an individual in pain and agony."), with LaBounty v. Gomez, No. 94 Civ. 3360 (DLC), 1997 WL 104959, at *8 (S.D.N.Y. Mar. 10, 1997) ("While uncontrolled hypertension is an objectively serious condition, there is no evidence that defendants were deliberately indifferent to this condition."). In this case, Stewart eventually was taken to the emergency room where, with medication, his blood pressure dropped after five hours. Because this indicates that his hypertension was a serious medical condition, at this stage Stewart has sufficiently satisfied the first element of this claim.

Additionally, Stewart has sufficiently pled that Does #3 and #4 were deliberately indifferent to his condition. He alleges that he repeatedly told the officers that he had high blood pressure and as a result needed to use the bathroom, the officers denied him that opportunity for more than four hours, they cursed and mocked him, and they stopped the van to buy donuts and coffee and use the bathroom themselves. Compl. ¶ 57. At this stage, the Court cannot say as a matter of law that this does not constitute reckless disregard for Stewart's condition. Therefore, the motion to dismiss Stewart's deliberate indifference claim is denied.

## VI. Malicious Prosecution Claim

Stewart's claim for malicious prosecution, the fourth cause of action, alleges that the fingerprinting error in 1993 that incorrectly identified him as Mendoza resulted in his wrongful prosecution in 2011. Compl. ¶¶ 52–55. "To succeed on a claim for

11

malicious prosecution, the plaintiff must show that a prosecution was initiated against him, that it was brought with malice but without probable cause to believe that it could succeed and that the prosecution terminated in favor of the accused plaintiff." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003) (citation omitted).

Stewart's claim fails. First, he was prosecuted for possession of marijuana, see Sud Decl., Ex. F, and that prosecution was not based on the erroneous assumption that Stewart was Mendoza. Moreover, the prosecution was brought with probable cause and adjourned in contemplation of dismissal. See id. An adjournment in contemplation of dismissal "is not considered to be a favorable termination for malicious prosecution claims," Green v. Mattingly, 585 F.3d 97, 103 (2d Cir. 2009), because it "leaves open the question of the accused's guilt." Singleton v. City of New York, 632 F.2d 185, 193 (2d Cir. 1980). Accordingly, the motion to dismiss Stewart's malicious prosecution claim is granted.

## VII. Monell Claim

Plaintiffs' tenth cause of action alleges a § 1983 claim against the City pursuant to Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658 (1978). Under Monell, a municipality is subject to suit under § 1983 "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell, 436 U.S. at 690–91). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, --- U.S. ---, 131 S. Ct. 1350, 1359 (2011). To establish a failure to train claim,

12

a plaintiff must prove that the municipality's failure amounted to deliberate indifference to those rights that were violated.  Id.

Plaintiffs allege that the City (1) instructed police officers "to stop citizens when they have not committed any crimes"; (2) failed to train police officers regarding "the practical meaning of probable cause or reasonable cause for arrests"; (3) failed to train police officers regarding "the importance of conducting an investigation before arresting a member of the public"; (4) deemphasized "the importance of an arrest warrant issued by a Judge or Magistrate"; and (5) failed to "take proper corrective and punitive actions against overreaching police officers." Compl. ¶ 69.

"When there is no underlying constitutional violation, there can be no municipal liability under Monell." Mendoza v. Cnty. of Nassau, No. 11-CV-02487 (SJF)(AKT), 2012 WL 4490539, at *7 (E.D.N.Y. Sept. 27, 2012) (citing Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006)).  Thus, plaintiffs' first, third, fourth, and fifth allegations, which do not correspond to any viable underlying constitutional violation, fail to state a claim.  Plaintiffs' second allegation corresponds to Lozada's underlying and viable claim for false arrest, but it nevertheless fails to state a Monell claim because it is entirely conclusory.  Although plaintiffs "specify what type of training the officers lacked, [they do] not provide any facts that would allow the court to infer what city policies, practices, or customs contributed to or caused the deficiency." Simms v. City of New York, No. 10-CV-3420 (NGG)(RML), 2011 WL 4543051, at *2–3 (E.D.N.Y. Sept. 28, 2011), aff'd, 480 F. App'x 627 (2d Cir. 2012); see Pugh v. City of New York, No. 01 Civ. 0129 (ILG), 2002 WL 398804, at *3 (E.D.N.Y. Jan. 15, 2002) (dismissing Monell claim because plaintiff's complaint "does not contain a single factual allegation in support of [the] conclusory

13

allegation" that the City failed to train police officers) (collecting cases).  Therefore, the motion to dismiss plaintiffs' <u>Monell</u> claim is granted.

**VIII. Remaining State Law Claims**

The Court has previously addressed those state law claims that defendants sought to dismiss.  The remaining state law claims are (1) Lozada's claim for assault and (2) <u>respondeat superior</u> claims against the City for all underlying claims based on the common law and Article I, § 12 of the NYSC.  Compl. ¶¶ 63, 66–70.  Defendants' argument that the Court should not exercise supplemental jurisdiction over these remaining claims is rejected because the Court has not dismissed all federal claims.  Defs.' Mem. at 21; <u>see</u> 28 U.S.C. § 1367(c)(3).  Of the remaining state law claims, however, those <u>respondeat superior</u> claims whose underlying claims fail must be dismissed as a matter of law.  <u>Karaduman v. Newsday, Inc.</u>, 416 N.E.2d 557, 564 (N.Y. 1980) ("[I]t is manifest that there can be no vicarious liability on the part of the employer if the employee himself is not liable . . . .").

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings is DENIED with respect to

- Stewart's deliberate indifference claim;
- Lozada's false arrest, illegal search, and assault claims; and
- Lozada's <u>respondeat superior</u> claims for false arrest, illegal search, and assault;

and GRANTED with respect to

- Stewart's false arrest, false imprisonment, malicious prosecution, and excessive force claims;

14

- Lozada's excessive force claim;

- All other <u>respondeat</u> <u>superior</u> claims; and

- Plaintiffs' <u>Monell</u> claim.

**SO ORDERED.**

Dated:    Brooklyn, New York
          July 26, 2013

__/s/_____
I. Leo Glasser
United States District Judge
